## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ROBERT KYLE,                                            Case No. 1:12-cv-748

      Plaintiff,                                 Dlott, J.
                                                       Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Robert Kyle filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Plaintiff presents four claims. In his first three claims, Plaintiff seeks remand for further review under sentence four; in his fourth claim, he seeks remand for consideration of new evidence under sentence six.[1] The ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record. In addition, a sentence six remand is unnecessary.

### I.        Summary of Administrative Record

Plaintiff previously filed for disability insurance benefits alleging a disability onset date of March 2003. (Tr. 89). That claim was denied initially, on reconsideration, and in

---

[1]A sentence four remand provides the relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). New evidence may be considered by this Court only to determine whether a sentence six remand is warranted, not to determine whether substantial evidence existed for the Defendant's previous denial of benefits. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

a written decision dated March 2007, following an evidentiary hearing held before Administrative Law Judge ("ALJ") Deborah Smith.  (Tr. 89-98).  Plaintiff appealed to this Court, which affirmed the Commissioner's decision on March 30, 2009.  See Kyle v. Com'r, Case No. 1:08-cv-191 (S.D. March 30, 2009)(Doc. 16, Dlott, J., adopting Doc. 12, R&R of Hogan, M.J.).  Plaintiff further appealed to the Sixth Circuit, which affirmed in a published opinion on June 28, 2010.  *Kyle v. Com'r of Soc. Sec.*, 609 F.3d 847 (6th Cir. 2010).[2]

While his appeal was still pending before the Sixth Circuit, Plaintiff filed a new application for disability insurance benefits ("DIB"), as well as an application for Supplemental Security Income ("SSI").  In both applications, Plaintiff alleged a disability onset date of April 1, 2007, a date after the Commissioner's last decision.  Plaintiff's last insured date for DIB was December 31, 2008; therefore, Plaintiff must prove that he became disabled prior to that date for purposes of obtaining those benefits.

Plaintiff's new claims were again denied initially and upon reconsideration, and were further denied after a hearing *de novo* before the same ALJ, Deborah Smith, who ruled on Plaintiff's first application.  Plaintiff was represented by new counsel at the April 12, 2012 evidentiary hearing, at which both he and vocational expert ("VE") George Parsons provided new testimony.  However, the ALJ's May 23, 2012 decision again determined that Plaintiff was not disabled.  (Tr. 18-31).

Plaintiff was 53 years old as of the date he was last insured, and has a limited education, having completed school only through the ninth grade.[3] (Tr. 28, 42).  Plaintiff

---

[2]Plaintiff does not cite the prior decision.  Although Defendant relies on it in its response in opposition, Plaintiff's reply memorandum remains silent, with no attempt to distinguish the prior case.
[3]This Court previously found that Plaintiff had completed the eleventh grade, but the discrepancy is immaterial to the present appeal. *See also Kyle v. Com'r*, 609 F.3d at 849.

worked for eighteen years as a machine operator and eventually, a supervisor, at the Formica plant in Cincinnati, Ohio. Plaintiff has not engaged in substantial gainful activity since being fired from that position in 2003.

Based upon the record and testimony presented, the ALJ found that Plaintiff had the following severe impairments: "low back and bilateral knee degeneration, and obesity."[4] (Tr. 21).  Plaintiff is 6' 2", and during the period at issue, weighed between 470 and slightly over 500 pounds. (Tr. 40-41). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  (Tr. 23).  Through the date of her decision, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of sedentary work except as follows:

> The claimant must be allowed to change positions every forty-five minutes.  Further, he could pick up/lift only from the waist level and could never reach overhead.

(Tr. 23).

Plaintiff cannot perform his prior work.  Based upon Plaintiff's age, limited education level, and limitation to sedentary work, Plaintiff would be deemed "disabled" if he were able to perform only unskilled work.  (Tr. 28)  However, the VE testified that Plaintiff had acquired work skills from his past work as a supervisor, which skills would be transferable to other sedentary work without significant vocational adjustment.  (Tr. 71).  Based on that testimony, the ALJ found that Plaintiff's acquired work skills were

---

[4]Obesity is to be considered under SSR 02-1p.  Plaintiff briefly presents an argument in his reply memorandum that the ALJ failed to adequately consider his obesity.  Plaintiff does not contend that he meets or equals a Listing due to his obesity.  The Sixth Circuit has held that SSR 02-01p does not require "any particular procedural mode of analysis for obese disability claimants."  *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006).  Aside from the cursory nature of Plaintiff's argument, the RFC adequately accounted for Plaintiff's morbid obesity in this case. *Accord Moody v. Com'r of Soc. Sec.*, 2011 WL

transferrable to at least three other occupations with jobs that existed in significant numbers in the national economy, such that Plaintiff was not disabled. (Tr. 28-30). The ALJ identified representative jobs as the semi-skilled positions of inspection clerk and shipping/receiving clerk, as well as the skilled position of expediting clerk.

Plaintiff sought review before the Appeals Council on grounds that the VE had erroneously determined that Plaintiff had transferable skills, and had compounded that error by testifying to jobs as to which Plaintiff's skills were not transferable. Plaintiff attached to his appeal the vocational analysis of Dr. Kenneth Manges, a VE retained by Plaintiff. (Tr. 5-14). While it considered Dr. Manges's analysis, the Appeals Council denied Plaintiff's request for review, finding no basis for altering the ALJ's decision. (Tr. 1-4). Therefore, the ALJ's decision stands as the Defendant's final determination.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

---

3840217 (E.D. Mich. July 15, 2011)(affirming where RFC addressed mobility problems associated with obesity).

by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B.  Plaintiff's Claims of Error**

**1.  Acceptance of Vocational Expert Testimony**

The ALJ relied heavily upon the testimony of VE Dr. George Parsons, who testified that Plaintiff had acquired job skills that were transferable to at least two semi-skilled positions, and to at least one skilled job.  Plaintiff argues that Dr. Parsons's testimony was insufficient as a matter of law to satisfy the Commissioner's burden to demonstrate that there were jobs in the economy that Plaintiff could perform.

It is noteworthy that Dr. Parsons's testimony in the current proceeding closely aligns with the same VE's testimony in the prior disability proceeding. Then, Dr. Parsons listed the jobs of "production supervisor, inspector, expediting clerk and shipping and receiving clerk" as sedentary-level jobs that he believed the Plaintiff could perform because of the transferability of skills from Plaintiff's prior position as a supervisor at Formica.  (Case No. 1:08-cv-191, Doc. 12 at 14).  Although those jobs did not involve the same tools and were not in the same industry, the VE made it clear that in the hierarchy of transferable skills, the supervisory skills were most significant."  *Id.* at 14-15.  The record reflects that in his last position with Formica, Plaintiff supervised, with the ability to hire and fire, up to 48 people.  (Tr. 71).  Both this Court and the Sixth Circuit rejected Plaintiff's prior argument that substantial evidence failed to support the determination that Plaintiff had gained transferrable skills from that position.  *See Kyle v. Com'r*, 609 F.3d at 856-857.

The regulatory framework concerning transferable skills requires an evaluation of the similarity of tools, work processes, work settings, and industries.   20 C.F.R.

404.1568(d)(4).   A transferable skill must be both "special" and "readily transferable."

Rule 201.00(c) and (e).

> (e) The presence of acquired skills that are readily transferable to a significant range of skilled work within an individual's residual functional capacity would ordinarily warrant a finding of ability to engage in substantial gainful activity regardless of the adversity of age, or whether the individual's formal education is commensurate with his or her demonstrated skill level. The acquisition of work skills demonstrates the ability to perform work at the level of complexity demonstrated by the skill level attained regardless of the individual's formal educational attainments.
>
> (f) In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.

Rule 201.00, 20 C.F.R. § 404, Subpart P, App. 2.  However, as the Sixth Circuit stated in affirming the Commissioner's prior decision:  "There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs.  A complete similarity of all…factors is not necessary for transferability."  *Id.* at 856 (quoting 20 C.F.R. §404.1568(d)(3)(additional citations omitted).

In his current appeal, Plaintiff presents virtually the same argument that he previously presented to the Sixth Circuit - that any skills he acquired in his prior work were not transferable, because his former duties in the laminating industry are too dissimilar to the positions and industries to which the VE testified.  However, the VE clearly testified that Plaintiff had acquired skills akin to a "production supervisor" (Tr. 69-70), which skills were transferable "[w]ithout significant vocational adjustment."  (Tr. 71).  Dr. Parsons updated DOT numbers, but otherwise testified that Plaintiff's skills were transferable to virtually all of the same positions referenced in the prior ALJ decision.  (*Id.*).[5]  For much the same reasons stated by the appellate court in rejecting Plaintiff's

---

[5]Notwithstanding this testimony, ALJ Smith listed only three positions, omitting the position of production supervisor from her most recent written decision.

prior argument, the undersigned finds unpersuasive Plaintiff's current argument that the VE's testimony does not constitute substantial evidence to uphold the ALJ's decision. *See generally, Kyle v. Com'r of Soc. Sec.*, 609 F.3d 847, 856 (6th Cir. 2010)("The fact that the DOT codes revealed these were jobs dissimilar to the laminates industry is not an indication Kyle's skills could not transfer to them.").

**Expediting Clerk**

As in the prior proceeding, Dr. Parsons testified that Plaintiff could perform the job of expediting clerk based upon the supervisory and troubleshooting skills obtained from his prior work.   (Tr. 72-73). The VE admitted that an expediting clerk must communicate with vendors and shippers to ensure that the correct merchandise, supplies, and equipment are forwarded and/or shipped on specific dates, (Tr. 75), which Plaintiff argues bears "no resemblance" to his prior job duties.   However, on cross-examination, the VE maintained that the duties were similar in terms of Plaintiff's acquired knowledge of the materials acquisition process, observation of production processes, and inspection.   (Tr. 76-79).   The VE's unwavering testimony provides substantial evidence for the ALJ's determination that Plaintiff's skills were transferable to that position.

**Shipping/Receiving Clerk**

The VE also testified that Plaintiff could perform the semi-skilled position of shipping and receiving clerk. (Tr. 73).  The VE testified that one representative shipping clerk position would be DOT 221.367-022. (Tr. 73). Plaintiff argues that the VE was "equivocal at best" when describing the similarity of Plaintiff's past work with that position, in that the VE admitted that the record did not show that Plaintiff had any ability to read blueprints, or to communicate with outside customers, as the referenced DOT

listing requires.  (Tr. 83).  However, on the whole, the VE insisted that Plaintiff's skill set would still be transferable to the position of shipping/receiving clerk, in that it was a matter of transferring the same acquired skills to a clerical position. (Tr. 84).   That testimony provides a sufficient factual basis for the ALJ's determination that Plaintiff's skills were transferable to the position.

**Inspector**

Last, Plaintiff argues that the ALJ erred by concluding that Plaintiff could perform at least two types of representative "inspector" positions.  The DOT numbers that the VE testified were representative included Phonograph Record Inspector and Playing Card Inspector.

Plaintiff first disputes the transferability of skills to the job of "Phonograph Record Inspector." (Tr. 29, 82).  The VE acknowledged that "not many" phonographs are still manufactured, and that the skills required for that job involve instruments such as calibrated microscopes and sound reproducing equipment that Plaintiff has never used. (Tr. 82). The undersigned agrees that the VE's testimony concerning the job of Phonograph Record Inspector does not appear to be sufficient to support a conclusion that Plaintiff's skills were transferable to that particular position.  However, that does not mean that Plaintiff's skills were not transferable to any sedentary "inspector" positions.

Although Plaintiff also disputes the transferability of his skills to the job of Playing Card Inspector, the VE's testimony on the transferability of skills to that position was much stronger.  Plaintiff argued at the hearing and continues to argue to this Court that there is a "vast discrepancy between a playing card and a 16'x5' sheet" of Formica laminate.  However, the VE clearly testified to the contrary. (Tr.81). That unequivocal testimony provides substantial support for the ALJ's decision.

Plaintiff alternatively argues that the total number of jobs to which his skills could transfer was not "significant."  The VE testified that there were 595 local expediting clerk jobs, and 70,000 nationally, and 994 shipping/receiving positions locally, and 113,000 nationally. (Tr. 72-73).  Based on his assumption that he could not perform either of those two positions, Plaintiff asserts that even if he could still perform the third job of Playing Card Inspector, that job does not exist in significant numbers in the national economy as is required for a non-disability finding, given that fewer than 311 such jobs[6] existed locally, and 40,000 nationally. (*Id.*).   Plaintiff's argument is unpersuasive, both because the undersigned concludes that substantial evidence exists that Plaintiff could perform the first two positions, and because what constitutes a "significant number" of jobs must be determined on a case-by-case basis.  *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).  The Sixth Circuit has found as few as 125 jobs in a local area to be "significant."  *See Stewart v. Sullivan*, 904 F.2d 708 (6th Cir. 1990); *see also Martin v. Com'r of Soc. Sec.*, 170 Fed. App'x 369, 374-75 (6th Cir. 2006)(affirming "the ALJ still could have reasonably found that Martin could perform the third position.").

## 2. The ALJ's Credibility Determination

Plaintiff next argues that the ALJ improperly discounted his credibility.  In addition to reviewing the objective and clinical medical records, which he found did not support a disabling level of pain, the ALJ considered Plaintiff's testimony and non-medical evidence.  A disability claim can be supported by subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Com'r of Soc. Sec.*, 336 F.3d at 475.   However, "an ALJ is not required to

---

[6]Although the VE testified to this number, his testimony appears to have encompassed both the Phonograph Record Inspector position and the Playing Card Inspector position.  Presumably, given the VE's testimony and Plaintiff's position that the job of Phonograph Record Inspector no longer exists, the number attributable to that position was very small.

accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted).

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

In this case, the ALJ cited Plaintiff's work history, lack of supporting objective medical evidence, conservative treatment history, inconsistencies in the record, and opinion evidence as reasons to discount Plaintiff's credibility. I find no reversible error.

### a. Alleged Failure to Account for Growing Obesity, Degenerative Nature of Impairments

Plaintiff claims to be disabled due to back and knee pain that preclude him from sitting, standing, or walking. Plaintiff has a remote history of knee surgery and diagnosis of degenerative disc disease. (Tr. 25, 91). However, the ALJ discredited Plaintiff's reports that those impairments precluded all work, partly based on Plaintiff's own report that he stopped working in 2003 only after being terminated, not because of any impairment. Plaintiff asserts that the ALJ erred by failing to assume that Plaintiff's knee and back complaints had not significantly worsened over time, pointing to

11

Plaintiff's testimony that when he was fired in 2003, he weighed only 260 pounds.[7]

Plaintiff argues that the ALJ's reasoning, that Plaintiff's knee and back conditions were not disabling in 2003 and therefore should not have been disabling years later, fails to account for the impact of his morbid obesity over time. Likewise, Plaintiff contends that the ALJ's reasoning virtually ignores the fact that his back and knee conditions were degenerative, and therefore could have been expected to worsen between the date he was fired in 2003, and his disability onset date in 2007.

The ALJ's citation to Plaintiff's prior ability to work was not error. Nor did the ALJ err by failing to consider the effect of Plaintiff's condition over time, or the effect of Plaintiff's weight gain. Importantly, Plaintiff's condition from 2003-2007 is no longer at issue. The RFC finding from March 2007 was specifically adopted, (Tr. 301), and the period prior to March 2007 is not subject to relitigation, having been previously affirmed by the Sixth Circuit. The prior record reflects that between his 2003 termination and March 2007, Plaintiff's weight ranged from 350-471 pounds. *See Kyle*, 609 F.3d at 849. Thus, Plaintiff's weight gain occurred well before the time period now at issue, but was not disabling as of March 2007. Based on the record as a whole, the ALJ did not err in continuing to rely on some of the same discrepancies in the record, including Plaintiff's prior work history, to discount Plaintiff's current credibility.

### b. Dr. Capurro and Plaintiff's conservative treatment

Plaintiff's claims might be more persuasive if the medical evidence more strongly supported the alleged increasing severity of his impairments. However, as the ALJ pointed out, Plaintiff's medical history reflects only conservative treatment, with

---

[7]Notwithstanding Plaintiff's most recent testimony, the record reflects that by May 2004, he weighed 471 pounds. (Tr. 92).

relatively few objective findings made by Plaintiff's primary care physician, Dr. Capurro. (Tr. 25).[8] The record does not indicate any ongoing orthopedic complaints, much less at the severity alleged. (Tr. 276-81). Specifically, the ALJ noted neuromuscular examinations that reflected no ongoing abnormalities such as an abnormal gait, or significantly reduced range of motion, or diminished muscle strength. (Tr. 25, 276-81). Even in May 2010, when Plaintiff reported during his examination that he was suffering from radiating back pain that registered as a "ten" – the maximum number on the pain intensity scale – Dr. Capurro documented a normal range of motion, normal reflexes, normal muscle tone, and normal coordination. (Tr. 25, 310). When Plaintiff sought treatment for a toe injury a few weeks later, he made no complaint of either low back or knee pain. (Tr. 25, 345). Similarly, Plaintiff's January 2011 visit did not appear to be related to back or knee pain, and Dr. Capurro specifically recorded "negative" findings for joint pain, and found no abnormalities in neuromuscular findings. (Tr. 25, 357). Other subsequent visits also reflected an absence of joint pain and no abnormal clinical findings. (Tr. 25, 353, 355). In other words, despite Plaintiff's reports to his physician of constant radiating pain, Dr. Capurro's clinical findings failed to substantiate those reports. (Tr. 25, 368-369). To the extent that Dr. Capurro's records reflect some difficulty with lumbar extension and back tenderness, Plaintiff still maintained normal lumbar flexion. (Tr. 26, 368-69).

Plaintiff argues that the ALJ erred in relying upon his conservative treatment history because Plaintiff testified that he limited office visits to Dr. Capurro due to the fact that he had no medical insurance and owed him money. (Tr. 57, 65). The ALJ

---

[8]The same physician's records and conservative treatment were cited in the prior decision in support of the ALJ's adverse credibility determination. (Tr. 94-95).

13

noted that after May 2010 there was a "complete absence of medical treatment until January 2011," but did not address Plaintiff's stated reason for that lack of treatment. (Tr. 25).

Despite the ALJ's failure to discuss Plaintiff's reasons for failing to treat more regularly with Dr. Capurro, the ALJ's reliance on the discrepancies between Plaintiff's reports of disabling pain and his medical records was not error.  Plaintiff testified that he sees Dr. Capurro only "[w]hen I have to," because Dr. Capurro is willing to call in prescription refills.  (Tr. 65).  Plaintiff also testified that he seeks treatment at the University of Cincinnati instead of going in to Dr. Capurro, to the extent he "need[s] anything."  (*Id.*).  Even when Plaintiff did treat with Dr. Capurro, those treatment records do not support Plaintiff's claim of disabling pain.  Plaintiff's finances do not explain away the clinical findings made by Dr. Capurro, or the failure of Dr. Capurro to refer Plaintiff for any additional testing (such as an electro-diagnostic study), or for more aggressive treatment, such as specialty care (orthopedic, rehabilitative care, or otherwise).  As the ALJ noted, Plaintiff has not recently sought emergency room care, and, despite professing being unable to stand or walk has never required any type of ambulatory assistance.  (Tr. 26).[9]

### c.    Other Inconsistencies

Plaintiff also finds fault with the inconsistencies cited by the ALJ, such as his ability to perform various activities of daily living (including personal hygiene "with assistance") and his claimed disability.  The ALJ referenced Plaintiff's testimony that he

---

[9]In the March 2007 decision, the ALJ noted several ER visits at which no radicular signs were found.  The ALJ also noted epidural steroid injections in Plaintiff's back (declined for his knee), knee surgery, rehabilitation that Plaintiff failed to attend, and chiropractic treatments, all of which generally reflect a greater level of treatment at that time despite the same professed lack of health insurance.  (Tr. 94-95; Case No. 1:08-cv-191, Doc. 12 at 2)

assisted his disabled sister, but failed to reference Plaintiff's additional statements, on his application, concerning activities he can no longer do.  (Tr. 26, 210).  The ALJ also noted other inconsistencies in Plaintiff's testimony, such as his description at one point that he performed past work at a sedentary level, lifting not more than ten pounds, but then somewhat contradictorily testifying that he carried up to fifty pounds.  (Tr. 196-197).

The fact that evidence exists that is consistent with Plaintiff's testimony does not mean that the ALJ erred as a matter of law in drawing an adverse credibility inference. *See generally, Kyle*, 609 F.3d at 857 ("[E]ven if this Court had come to a different factual conclusion, it would not disturb the findings of the ALJ which are based on substantial evidence.").  Plaintiff testified that he spends much of his time "in bed," but also testified that he sits on his bed rather than a chair because it is higher and easier for him to stand up from. (Tr. 60, 67).  He explained that he pulls a chair up the stove to cook, and sits whenever possible.  (*Id.*, stating that he gets his grandsons dressed in the morning, one of whom he watches during the day, showers, and washes dishes and cooks by pulling up a chair, and that his family begs him to cook breakfast because he is "the breakfast king at the house.").  In other words, viewing the record as a whole, the undersigned finds substantial evidence exists to support the ALJ's credibility assessment.

In his reply memorandum, Plaintiff for the first time argued that this case is controlled by *Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013), in which the Sixth Circuit held that it was improper for the ALJ to reject a treating psychiatrist's opinions concerning the plaintiff's level of functional impairment, based upon the ALJ's review of the claimant's daily activities.  The Sixth Circuit noted that "the record did not suggest that Gayheart could do any of these activities on a *sustained*

*basis*, which is how the functional limitations of mental limitations are to be assessed."
*Id.*, (italics original).   *Gayheart* is distinguishable for the reasons expressed by
Defendant in its surreply. (Doc. 11-1).   An ALJ not only is permitted to consider a
claimant's level of daily activities in assessing his credibility, but is generally required to
do so.   *See* 20 C.F.R. §404.1529(c)(3); *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387,
392 (6th Cir. 2004).   Moreover, as discussed below, this is not a case in which the ALJ
improperly rejected the treating physician's opinion.

### 3.  Treating Physician Rule

Plaintiff's third claim is that the ALJ erred by rejecting the opinions of Dr.
Capurro.   The VE testified that Plaintiff would not be able to work if all of the limitations
suggested by Dr. Capurro were incorporated into Plaintiff's RFC.  (Tr. 74).   However,
the ALJ rejected Dr. Capurro's opinions as conclusory, adopting instead as entitled to
"significant weight" the opinions of a non-examining consulting physician. (Tr. 26).

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R.
§404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of
the nature and severity of your impairment(s) is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with the other
substantial evidence in your case record, we will give it controlling weight."  *Id.*; *see also*
*Warner,* 375 F.3d at 390.

The reasoning behind what has become known as "the treating physician rule"
has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of the claimant's medical
> impairment(s) and may bring a unique perspective to the medical
> evidence that cannot be obtained from the objective medical findings

alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."  *See Blakley v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Com'r of Soc. Sec.,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2).  "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so.  *Id.*; 20 C.F.R. §404.1527(c)(2). Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p.

Of course, not every opinion uttered by a treating physician is entitled to the same weight. Both the determination of a claimant's RFC and the ultimate determination of disability are "reserved to the Commissioner." 20 C.F.R. §404.1527(d). Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

The ALJ stated that, in contrast to the opinions of the consulting physicians, she was placing "less weight on the medical source statements provided by Dr. Capurro in May of 2010 and August of 2011, respectively." (Tr. 27). The ALJ explained:

> Initially, Dr. Capurro provided a short, two–paragraph summary of the claimant's conditions and opined that these conditions have precluded gainful employment since March of 2006…In a second opinion, Dr. Capurro opined that the claimant's physical impairments preclude the performance of even a diminished range of sedentary work activity…..Dr. Capurro['s]…opinion is not entitled to controlling weight because it is neither well supported, nor consistent with the substantial evidence of record.
>
> Notably, Dr. Capurro's first assessment provided no supporting documentation or function-by-function analysis of the claimant's abilities, and instead simply stated that the claimant has likely been disabled since March of 2006….Not only was the conclusory nature of Dr. Capurro's assessment not well taken, his opinions that the claimant is disabled is a conclusion reserved to the Commissioner. …
>
> Additionally, Dr. Capurro's second assessment offered an equally conclusory opinion that also appeared inconsistent with his prior office notes and course of treatment. Specifically, Dr. Capurro opined that the claimant could not sit, stand, or walk more than one hour. …However, if the claimant were as limited as Dr. Capurro opined, he would essentially be bedridden, which is not the case. As noted above, the claimant has continued to maintain at least some daily activities, which has included caring for his sister and picking his daughter up from work. Moreover, Dr. Capurro's treatment notes almost predominantly reflect normal

neuromuscular findings. Even when the claimant presented with alleged radiating back pain that registered as a ten on a …pain intensity scale, Dr. Capurro still documented an absence of tenderness, normal range of motion, normal reflexes, normal muscle tone, and normal coordination…..

Further, Dr. Capurro treated the claimant infrequently..[and] [t]he level of pain medication prescribed by Dr. Capurro also has not generally varied and he has not suggested an aggressive future course of treatment, both of which render his opinions even less persuasive.

(Tr. 27).

I find no error. The ALJ clearly articulated "good reasons" for his analysis, all of which are supported by the record. As the ALJ explained, Dr. Capurro's opinions were not entitled to controlling weight because they were not "well-supported" and because the opinions were further undermined by other evidence, including but not limited to Plaintiff's activities of daily living. Last but not least, Dr. Capurro's primary opinion was on an issue (the ultimate disability decision) that is expressly reserved to the Commissioner, and as to which no deference was required.

Plaintiff further complains that the consulting physician's RFC should not be deemed to be substantial evidence, because it was based on a March 2007 RFC that was "totally out of date," and the consultant's opinion itself was dated in 2010, more than two years prior to the evidentiary hearing in this case. Again, the undersigned finds no error. The prior RFC determination applies under Acquiescence Rule 98-4(6) and *Drummond v. Com'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). Plaintiff has failed to point to any evidence that would undermine the consulting physician's opinion.

### 4. Failure to Consider Evidence from Dr. Manges Sentence Six Remand

As his last claim of error, Plaintiff also asks this Court to consider vocational evidence submitted to the Appeals Council following the ALJ's decision. Plaintiff

retained Dr. Kenneth Manges, an experienced VE who previously served as the former president of the American Board of Vocational Experts, (Tr. 383), to offer opinions concerning the transferability of Plaintiff's job skills to new employment.

Dr. Manges's report substantially contrasts with and contradicts Dr. Parsons's opinions, suggesting multiple flaws with Dr. Parsons's analysis. In short, Dr. Manges opines that Plaintiff never gained any transferrable skills from his prior employment, and that, alternatively, whatever transferrable skills that he obtained were not transferable to the jobs to which Dr. Parsons testified. (Tr. 376-382).

Pursuant to Sentence Six, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is both new, in that it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material," meaning there is "a reasonable probability that the Secretary would have reached a different disposition." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citations omitted); *see also Hollon v. Com'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). Dr. Manges's opinions are "new" in that the opinions were elicited after the ALJ's decision. There is a reasonable question as to whether the opinions are "material." On the one hand, Plaintiff argues that Dr. Manges "addresses all of the mistakes made in Dr. Parsons'[s] testimony (in a detailed way), [such that] there is …a reasonable probability that the Commissioner would have reached a different decision" (Doc. 10 at 10). On the other hand, nearly identical opinions by Dr. Parsons were previously upheld on appeal by this Court and by the Sixth Circuit.

In the end, though, the undersigned concludes that Plaintiff is not entitled to a sentence six remand because he cannot establish good cause for his failure to present the evidence to the ALJ. *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard*

*v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  "'Good cause' is not established solely because the new evidence was not generated until after the ALJ's decision.  The Sixth Circuit has taken a 'harder line.'" *Saunders v. Com'r of Soc. Sec.*, 2010 WL 1132286 at *3 (W.D. Mich. March 3, 2010)(*quoting Oliver v. Sec. of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)(additional citations omitted).

Plaintiff represents he did not retain Dr. Manges prior to the evidentiary hearing before the ALJ because "until the ALJ denied this claim, counsel had no reason to believe the expenditure of funds to establish the untrustworthiness of Dr. Parsons's testimony, which counsel's cross examination showed was not factually based, was a needed expense." (Doc. 10 at 10). However, the record reflects that identical opinions by Dr. Parsons led to a nearly identical conclusion by the same ALJ in the prior proceeding.  The main thrust of Plaintiff's prior appeal to the Sixth Circuit hinged on the exact same issue – the transferability of his supervisory job skills.  Thus, it is not reasonable for Plaintiff to argue that he was unaware of those opinions prior to this proceeding, or that he did not know until her most recent decision that ALJ Smith would again rely on Dr. Parsons's opinions.

### III. Conclusion and Recommendation

For the reasons discussed herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED**, as it is supported by substantial evidence, and that this case be **CLOSED**.

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERT KYLE,                                        Case No. 1:12-cv-748

        Plaintiff,                                  Dlott, J.
                                                    Bowman, M.J.

      v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).